Ex Parte, George Remus.

Decided January 6, 1928.

*Chas H. Elston* and *John P. Goldsberry*, for the Petitioner.

*Chas P. Taft, 2nd,* prosecuting attorney, and *Carl E. Basler,* and *Walter K. Sibbald,* assistant prosecuting attorneys, for the Sheriff.

Bell, J.

This cause came on for hearing upon a petition for a writ of habeas corpus, the amended return of the Sheriff, the reply and the evidence.

The question for determination is the legality of the detention of George Remus by William Anderson, the Sheriff of Hamilton county.

The petition alleges that Remus is unlawfully restrained

of his liberty by the said Anderson, Sheriff, and prays for his discharge from the claimed unlawful restraint.

The return of the Sheriff sets forth that Remus is restrained by virtue of a commitment issued by the Probate Court of this county, the pertinent part of which reads as follows:

"All the proceedings prescribed by law to entitle George Remus to be admitted in the Lima State Hospital having been had, you are commanded forthwith to take charge of and convey the said George Remus to the hospital at Lima, Ohio."

The reply to the return of the Sheriff sets forth that the Probate Court was without authority to make such an order; that the order is void, and that the Sheriff of Hamilton county has no legal authority to hold the said Remus.

The evidence adduced consists of certified copies of the report of certain physicians appointed by the court to examine Remus, the opinion of the court finding Remus to be now insane, and the order committing him to the Lima State Hospital, and a paper entitled "Inquest of Lunacy."

It is conceded that the Probate Court had jurisdiction of the subject matter under inquiry and of the person of Remus, but it is contended by counsel for Remus that the Probate Court had no jurisdiction to make this order of commitment, it being claimed that certain jurisdictional prerequisites were lacking.

Counsel for the Sheriff contends that the case is disposed of by Section 12165, General Code, which reads as follows:

"*When Writ Not Allowed.* If it appears that the person alleged to be restrained of his liberty is in custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ shall not be allowed; or, if the jurisdiction appears after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process, judgment, or order."

The contention of counsel for the Sheriff being that the Probate Court having general jurisdiction over insanity

matters, and in this case having jurisdiction over Remus the writ must be denied.

This position, in the opinion of the court, is untenable, is not supported by the authorities, nor the statute. The decisions of the courts of last resort are uniform in holding that even though a court has jurisdiction of the person and the subject matter under inquiry, if it makes an order or enters a judgment without legal authority which deprives a person of liberty, the legality of the order or judgment will be determined on habeas corpus.

12 Ruling Case Law, 1196.

*People, ex rel. Tweed,* v. *Liscomb,* 60 N. Y., 559.

*Craig* v. *Hecht,* 263 U. S., 255.

*Hans Neilson, Petitioner,* 131 U. S., 176.

*Ex Parte Creasy,* 243 Mo., 679.

*In Re Mills,* 135 U. S., 263.

The legislature of Ohio by Section 12165 of the General Code above quoted has written into the statute law of this state this well recognized principle.

It is therefore the duty of this court to determine whether or not the Probate Court had jurisdiction to make the order committing Remus to the Lima State Hospital.

Remus was tried in this court for the murder of his wife Imogene Remus. The killing took place on the 6th day of October, 1927, and the defendant Remus interposed the defense that he was insane at the time of the killing. The jury trying that cause acquitted Remus on the sole ground of insanity. By their verdict and the legal presumption attaching thereto the status of Remus was fixed as an insane person and the burden of proving that he was sane at any date subsequent to October 6, 1927, was upon Remus. By virtue of this verdict and the statutes of this state the clerk of this court certified the finding of the jury to the Probate Court. A hearing was had by the Probate Court, and as the result of the hearing that court made the order which is in question in this case.

It is claimed by counsel for Remus that section 1956, General Code, had application to the proceedings in the Probate Court and that that section makes it a jurisdictional prerequisite to the making of an order of commitment that in addition to the finding of the Probate Court

that the person being examined is insane, there must be a certificate of two medical witnesses in attendance; that there is no such certificate, and that without said certificate the Probate Court was without jurisdiction to order the commitment of Remus to the Lima State Hospital; that the commitment is void, and that Remus should be discharged.

This brings us to a consideration of the question — Does Section 1956, General Code, have application to proceedings in the Probate Court where a defendant has been acquited of crime upon the sole ground of insanity?

A brief examination of the history of the statutes with reference to insane persons will be helpful in the dtermination of this question. Prior to the year 1906 all insane persons in Ohio were confined in seven state institutions located at Cleveland, Columbus, Toledo, Dayton, Athens, Massillon and Cincinnati, which were provided for in Chapter 7, Sections 1947 to 1983, both inclusive, and Sections 7240 to 7243 of the General Code. Section 1956, General Code, which is the basis of the claim of Remus to be discharged, is found in Chapter 7, and reads as follows:

*"Court Shall Have Certificate of Two Medical Witnesses.* — Unless for good cause the investigation is adjourned, the judge, at the time appointed, shall proceed to examine the witnesses in attendance. Upon the hearing of the testimony, if he is satisfied that the person charged is insane, he shall cause a certificate to be made out by two medical witnesses in attendance that the person is insane to the best of their knowledge and belief. The medical witnesses must have at least five years experience in the practice of medicine, shall not be related, by blood or marriage, to the person alleged to be insane, or to the person making the application for commitment, nor have any official connection with any state hospital. The medical certificate shall contain answers to such interrogatories as the Ohio Board of Administration, with the advice of the superintendents of the several hospitals prescribes."

In 1906 the legislature passed an act providing for the establishment of a state hospital for the criminal insane to be located at Lima, Ohio, and known as Lima State Hospital, and porvided in the act the procedure for their

incarceration. The act as originally passed is found in 98 Ohio Laws at page 236. This act as carried into the General Code as Chapter 8, Sections 1984 to 2003, both inclusive, and Sections 13614, 13615, 13677 and 13679, General Code. Upon first reading of the various sections with reference to the trial and commitment of insane persons, they appear conflicting and ambiguous. After careful study they disclose two totally different, but equally clear, legislative policies with reference to insane persons. One policy has to do with that class of persons who are insane but not criminal. The other has to do with that class of persons who are both insane and criminal.

The first method provides for the filing of an affidavit in the Probate Court, the issuance of a warrant, the issuance of subpoenas for such witnesses as the Court deems necessary, in cluding two reputable physicians; the fixing of a date within five days for the hearing; the requirement that the person charged be present in court, or if unable, the Court must personally visit the one charged; upon hearing the tstimony, if the Court is satisfied that the person charged is insane, he shall cause a certificate to be made by two medical witnesses in attendance that the person is insane to the best of their knowledge and belief. These medical witnesses shall be physicians of at least five years experience in the practice of medicine, not related to the person alleged to be insane or the person filing the affidavit, nor have any official connection with any state hospital.

This procedure applies to every case of insanity for the incarceration of persons other than those criminally insane;

The second method provides the exclusive procedure for the criminal insane, and in every case, except transfers of convicts from the penitentiary after sentence requires the verdict of a jury as a condition precedent to commitment to the Lima State Hospital.

Section 13577, General Code, provides that if the Grand Jury, upon investigation of a person accused of crime, finds such person insane, it shall report such finding to the Court; a jury shall be impaneled to determine the question of such person's insanity; if the jury find such

person insane, he shall be committed to Lima. Sec. 13608 and Sec. 13614 provide the method of procedure after indictment of a person, where Counsel for the State or the accused suggest to the Court that the defendant is insane; both these sections provide for a trial by jury.

From this brief review it is apparent that the legislature has provided the procedure for inquiring into the sanity of a person from the time he is accused of crime until sentence, and the question shall always be determined by a jury.

Where a person has been found not guilty on the sole ground of insanity, sections 13612 and 13679 apply. Section 13612 has been in force in this state for a half century or more. Section 13679 was passed in 1906 as part of the Lima State Hospital Act. The rule of statutory construction is, that Section 13679, having been passed subsequent to section 13612, the legislature had in mind Section 13612 at the time of the passage of section 13679. This construction is made entirely clear from the language used in the last mentioned section.

Section 13679, in so far as is pertinent, provides as follows:

"*Acquital Because of Insanity.*_ When a person tried upon an indictment for an offense is acquited on the sole ground that he is insane, *and proceedings are had thereafter as provided by law*, he shall be committed to the Lima State Hospital."

The clause "and proceedings are had thereafter as provided by law" must of necessity refer to Section 13612 General Code, as that is the only other section providing procedure after acquital on the sole ground of insanity.

Section 13612 reads as follows:

"*Proceedings When Accused _is Acquited on Sole Ground of Insanity.*_ When a person tried upon an indictment for an offense is acquited on the sole ground that he was insane, such fact shall be found by the jury in the verdict, and certified by the clerk to the Probate Court. Such person shall not be discharged, but forthwith delivered to the Probate Court, to be proceeded against upon the charge of lunacy, and the verdict shall be *prima facie* evidence of his insanity."

In the opinion of the Court these two sections of the statute provide the entire method of procedure after a jury has acquitted a defendant on the sole ground of insanity.

Section 13612 provides that a certificate by the clerk of the court wherein the acquittal took place to the Probate Court is *prima facie* evidence of the insanity of the person named in the certificate at the time of the hearing in the Probate Court, and in the absence of any evidence to the contrary the Probate Court would be warranted under this statute in immediately committing the person so acquitted to the Lima State Hospital for the criminal insane.

In this case the record discloses that the Probate Court did appoint three alienists to examine George Remus and from the record it would appear that the Probate Court did take into consideration Section 1956, General Code, in the proceedinsg had in that court, but in the opinion of this Court it was not necessary for the Probate Court to appoint physicians, nor for him to take into consideration Section 1956 of the General Code, as that section has no application to a proceeding such as was had in this matter.

The certificate of the clerk, that George Remus had been found not guilty on the sole ground of insanity, gave the Probate Court jurisdiction and established a *prima facie* case and the burden was upon Remus at the time of hearing to satisfy the Probate Court that he was then sane.

This Court has not before it the evidence that was adduced in the hearing in the Probate Court, nor could this Court consider that evidence if it were in this record, for the reason that it is a well settled principle of law that a writ of habeas corpus may not be substituted in any action for a writ of error. It is obvious, however from, the opinion and order of the Probate Court that Remus failed to prove to the satisfaction of that Court that he was sane at the time of the hearing. Whether the Probate Court erred in its conclusion upon the evidence adduced cannot be determined in this action but can only be considered in a proceeding in error.

It follows that the Probate Court of this county had full and complete jurisdiction to make the order to the sheriff of Hamilton county under which he is restraining Remus of his liberty, and that the petition for a writ of habeas corpus should be, and is hereby dismissed.

Common Pleas Court of Fayette County.

THE BUCKEYE STATE BUILDING & LOAN COMPANY V. GRANT DEWITT ET AL.*

Decided April 4, 1925.

*Wilson & Rector*, Columbus, Ohio, attorneys for Plaintiff.

*Joseph Hidy*, attorney for *Peoples & Drovers Bank* and *Frank DeWitt.*

*C. C. Crabbe*, attorney General, *R. R. Zurmehly*, and *Ray Maddox, attorneys for State of Ohio ex Rel.*

REID, J.

The petition in this action is in a foreclosure against the premises of Grant DeWitt *et al.*, who gave a mortgage

*Affirmed by the Court of Appeals, January 28, 1926; motion to certify to the Supreme Court denied April 21, 1926.