**Wilbert LONG, Juvenile Officer, Petitioner-Respondent,**

v.

**L.E.P., Sr., Respondent-Appellant.**

No. 50266.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 8, 1986.

Phillip J. Kavanaugh, St. Louis, for respondent-appellant.

Donna Head, St. Louis, for petitioner-respondent.

## ORDER

PER CURIAM.

Father appeals from the trial court's judgment terminating his parental rights to his son under § 211.447.2(1), RSMo 1984. No jurisprudential purpose would be

**John MOORE, Relator,**

v.

**Walter "Buck" BUERGER, Respondent.**

No. 51004.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 8, 1986.

Rehearing Denied May 6, 1986.

William Bernard Haller, Clayton, for relator.

John Dennis Rayfield, Pros. Atty., John W. Hammon, Hillsboro, for respondent.

KAROHL, Judge.

This is an original proceeding wherein relator seeks relief under a writ of habeas corpus. Rule 91.02. The relator alleges that he is in the custody of respondent Sheriff of Jefferson County under a judgment of direct criminal contempt, and the Warrant of Commitment of a circuit judge of Jefferson County reads as follows:

1. The Court finds that the Court caused notice to John Moore to be made through his counsel of record, William Haller, that John Moore shall appear at 1:00 P.M., on December 16, 1985, to purge himself of direct Contempt of Court for his statements under oath in the cause of Moore vs. Moore, heard by the Court on December 6, 1985, and;

2. The Court finds from the evidence adduced that John Moore, by testifying falsely under oath as to the whereabouts of the assets of his marriage, specifically, $54,000.00 in cash or deposits, has committed a direct Contempt of Court, and;

3. The Court further finds that the said John Moore on this 16th day of December, 1985, has been given the opportunity to purge himself of said direct Contempt of Court, and;

4. That the said John Moore has failed and refused to do so.

NOW, THEREFORE, the Court finds and holds the said John Moore in direct Contempt of Court and sentences the said John Moore to six (6) months in the Jefferson County Jail therefor.

Relator further alleges that the judgment is not authorized by § 476.110 RSMo 1978 nor by recognized inherent power of the trial court to summarily determine and punish direct contempt because perjury [even if proven] is not such an assault on the dignity of the court as requires judicial response in the form of direct criminal contempt. Rule 36.01(a). He therefore alleges the judgment of contempt solely on the conclusion of the court that relator testified falsely was unauthorized and denied petitioner due process under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

We granted a provisional writ principally on the authority of the latest decision of the Supreme Court on this issue, *Ex parte Creasy*, 243 Mo. 679, 148 S.W.2d 914 (Mo.

1912), and the absence of statutory authority. § 476.110 RSMo 1978.

The underlying facts are found in the testimony given by relator and others in a dissolution proceeding filed by relator. A summary of the evidence is sufficient to frame the issues in this proceeding. Relator and his wife sold their marital home for $54,000. The proceeds were placed in a bank. Relator withdrew the money and claimed to have lost the proceeds while gambling. The proceeds were no longer available to be divided as marital property. However, for purposes of this case, the evidence was overwhelming that he diverted most of the money to his sister, and that he did not gamble and lose substantially all the money. We assume without deciding that his testimony on an issue relevant to the dissolution was not truthful.

At the close of the first day of trial, the following occurred in chambers:

THE COURT: In chambers, the Court has informed counsel for the Petitioner, John Moore, that the case is being continued to the 16th day of December, 1985, at 1:00 o'clock in the afternoon.

The Court has informed counsel for the Petitioner that he will have until that time. The Petitioner will have that time available to him to purge himself of contempt of this court.

The Court is absolutely certain that the Petitioner has lied under oath in this courtroom and that he has attempted to secrete funds in the amount of $54,000.

The Court has directed counsel for the Petitioner that for the Petitioner to purge himself of this contempt the Petitioner must reveal and produce the $54,000 now concealed and apologize to the Court for lying under oath on December 16, 1985.

Or, in the alternative, the Court will hold the Petitioner in contempt of Court and forthwith send him to the Jefferson County jail for a term to be decided by this Court.

On December 16, 1985, relator appeared before the court with counsel and the following transpired in open court:

## QUESTIONS BY THE COURT OF THE PETITIONER, MR. MOORE:

Q  Mr. Moore, at the close of the hearing on December 6, 1985, I informed your attorney so that he could inform you that I was going to give you an opportunity to purge yourself of contempt of Court.

You now have that opportunity, sir.

A  I told the truth; that's all I can say.

Q  You are refusing to purge yourself of the contempt of this court?

A  I don't understand the words, what you mean.

Q  Has Mr. Haller told you what the Court expects of you today?

A  All I can say is I told the truth.

Q  Just answer my question. Has Mr. Haller told you what the Court expects of you today?

A  Right.

Q  You have had the opportunity to do what the Court has asked of you. Are you refusing to do that?

A  I still don't understand, really. To be truthful, I don't understand it.

Q  Mr. Moore, the Court is going to sign this warrant for commitment. I'm going to read it to you because it will carefully explain to you what's happening.

"To: Walter 'Buck' Buerger, sheriff of Jefferson County. Greetings: Re John Moore.

## WARRANT AND COMMITMENT READ IN OPEN COURT

Here is the warrant of commitment to the bailiff. Take charge of Mr. Moore and put him in the Jefferson County jail for six months.

With that finding, the Court feels compelled to disqualify itself from the case of Moore versus Moore and will transfer the cause for hearing to Division 1 of the Circuit Court of Jefferson County.

The Supreme Court opinion in *Ex parte Creasy*, 243 Mo. 679, 148 S.W. 914 (Mo. 1912) is significant and helpful in several respects. First, it approves the application of a habeas corpus to the present case. Creasy was subpoenaed before a grand jury to give testimony in a matter involving illegal sale of intoxicating liquor. After giving vague answers, he was ordered to answer two questions to which he replied, "I could not say. Possibly I did." And, "I could not say. Probably I did." Thereafter, the trial court explained that the grand jury wanted an unequivocal "yes" or "no" to matters that had occurred only recently and about which he should have a clear memory. Creasy maintained that he had answered as best he could. From his manner of replying to the *court's questions*, and his general demeanor while *before the court*, the court concluded that it had no question in its mind that Mr. Creasy was willfully and knowingly withholding proper information, that his answers were evasive and equivocal, and a subterfuge to avoid answering at all. The court held him in contempt and sentenced him. The Supreme Court discharged the defendant. The opinion may be read to state facts under which *Creasy* was sentenced for indirect criminal contempt for failure to answer before the grand jury or direct criminal contempt for failure to answer the questions of the court. The commitment recited that the contempt occurred in the presence of the court. What is important here is that the court determined that as to contempt judgments the writ of habeas corpus constitutes a proper attack because, "the court cannot make contempt of that which is not contempt: and every attempt to do so would be in excess of authority or jurisdiction, as much so as if the court had no authority or power to punish for contempt, either in relation to the person or subject matter. There must be contempt in order to justify punishment for that offense." *Creasy*, 148 S.W. at 920.

Second, the court concluded that Creasy had answered the questions put to him even if the answers were not truthful. It said,

[i]f not truthful, the petitioner subjected himself to a charge of perjury, but not to a charge of contempt for refusing to answer a question. There is a marked difference between a refusal to answer a question so as to render one guilty of contempt of court directing an answer, and untruthfully answering the question. The facts of this record may tend to show perjury, but do not show contempt based on the ground of a refusal to answer questions. Under the admitted facts, the trial judge has found contempt, where none in fact exists. He has adjudged contempt where there was no contempt, and in this his judgment is void for want of power to enter the particular judgment. The ipsa dixit of no court can make contempt of that which does not rise to the level of contempt. If this man has been guilty of perjury, the courts are open, but the summary process for contempt does not lie in such a case.

*Creasy*, 148 S.W. at 921.

Third, the court determined that the trial court had failed to comply with the provisions of § 3884, R.S. 1909 which required the trial court to specify the particular circumstances of the offense of contempt and set them forth in the order or warrant of commitment. § 476.140 RSMo 1978 is the current counterpart of § 3884. The Supreme Court relied on its holding of *In re Shull*, 121 S.W. 10 (Mo.1909) where the court discharged the petitioner because the commitment stated conclusions rather than facts and circumstances. *Creasy*, 148 S.W. at 922. The present warrant and commitment for relator is similar to that rejected as insufficient in *Shull* because the trial court concluded that John Moore testified falsely under oath but failed to state the questions and answers which were untruthful. The Supreme Court then said,

In contempt proceedings which result in detention of one's liberty, the law says that the facts and circumstances of the contemptuous acts must be spread on the record in the commitment or order of commitment. Such was not done here, and petitioner's legal rights have been

invaded even though he is an ordinary bootlegger. With the latter charge we have nothing to do here, but the law furnishes a forum for the orderly prosecution of such offenses, as well as for the felon who has been guilty of perjury. Bootlegging and perjury, however, are not necessarily contempts of court.

*Creasy,* 148 S.W. at 921.

■ The concurring opinion is also significant. Judge Woodson there said,

If they [the answers given] were false, then he was guilty of the crime of perjury; and, if true, then he was neither guilty of contempt of court nor the crime of perjury, but was innocent. Consequently the truthfulness or falsity of his testimony was one of fact, and, being a felony, punishable by imprisonment in the penitentiary, he was clearly entitled to a trial by jury under the guarantee of the section of the constitution before mentioned. If that is true, and I am unable to see why it is not, then a jury, and not the court, should have passed upon his guilt or innocence; and, as that was not done, the petitioner should be discharged.

*Id.* at 924. Judge Woodson concluded that the court's inherent power to punish criminal contempt is limited by a statutory definition of contempt. His view was not, however, adopted by the majority, and is not the law in this state. It is evident that the definition of direct criminal contempt given in § 476.110 RSMo 1978 does not include perjury as a ground for direct criminal contempt. We do not rest our decision on Judge Woodson's view that the definition in the statute is comprehensive or conclusive on the power, and indeed, the duty, of a trial court to protect the court from acts of direct contempt involving matters such as unruly conduct or the intentional disregard of appropriate orders. To that extent, we believe that the inherent power of the court to summarily punish direct criminal contempt is broader than the statutory definition. Otherwise, § 476.130 RSMo 1978 limits that power to summarily punish. "Courts have long exercised a power

summarily to punish certain conduct committed in open court without notice, testimony or hearing." *In re Oliver,* 333 U.S. 257, 274, 68 S.Ct. 499, 508, 92 L.Ed. 682, 694.

■ The United States Supreme Court established a due process limitation on the inherent power. "However, this court recognized that such departure from the accepted standards of due process was capable of grave abuses, and for that reason gave no encouragement to its expansion beyond the suppression and punishment of the court—disrupting misconduct which alone justified its exercise." *Oliver,* 333 U.S. at 274, 68 S.Ct. at 508, 92 L.Ed. at 695.

Except for a narrowly limited category of contempt, due process of law as explained in the *Cooke* case [267 U.S. 517, 69 L.Ed. 767, 45 S.Ct. 390] requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public.

*Oliver,* 333 U.S. at 275, 68 S.Ct. at 508–509, 92 L.Ed. at 695. So it is in the present case. The relator's testimony, if perjurious, was not an affront to the process of the court or the dignity of the court although it may have been an insult to the intelligence of the court. Further, the court did not summarily deal with the matter. It waited ten days. This procedure is not as provided in § 476.130 RSMo 1978. The court also distinguished this case from the type of conduct which it may punish

under the guise of direct criminal contempt. Its decision therefore is contrary to the limitations in *Oliver*.

One of the elements of due process is a notice of the charge. In the present case, it is clear that the trial court determined the contempt on December 6, 1985, when it announced, in chambers, that it was "absolutely certain that the petitioner had lied under oath in this courtroom and that he has attempted to secrete funds in the amount of $54,000." This finding mixed elements of what the trial court considered to be direct contempt, perjury, with indirect contempt, secretion of funds. All that occurred on December 16, 1985 was an offer to relator to purge himself of what the court had previously determined to be contempt. There was no disruption of the court process. There was no summary punishment. There was no notice of charge and no hearing of any facts. All that the court did was conclude that relator failed to tell the truth under oath on a relevant issue. Under the holding in *Creasy*, the conduct of relator was not direct criminal contempt. Under the holding in *Oliver* the procedure was a violation of due process.

Further, the warrant and commitment refers to "evidence adduced" that relator testified falsely. There was no such evidence apart from the court's conclusion, however justified it may have been. As a result, the warrant of commitment is defective for the further reason recognized in *Creasy*, that the facts and circumstances constituting contempt must be set forth, and not the legal conclusions of the judge as to what are the facts and circumstances. *Creasy*, 243 Mo. 679, 704, 148 S.W. 914, 922 (1912); *Vokoleck v. Carnes*, 512 S.W.2d 112, 114 (Mo. banc 1974).

The relator is ordered discharged from custody and his bail and security authorized by this court is discharged.

KELLY, P.J., and CARL R. GAERTNER, J., concur.