STATE of Missouri, ex rel., Hershel D. SHEPHERD, Assistant Prosecuting Attorney Courthouse (Buchanan County) St. Joseph, Missouri, Relator,

v.

Honorable Merrill M. STEEB, Circuit Judge Courthouse (Buchanan County) St. Joseph, Missouri, Respondent.

No. WD 39607.

Missouri Court of Appeals, Western District.

Aug. 11, 1987.

F. Russell Millin, Kansas City, for relator.

Merrill M. Steeb, St. Joseph, pro se.

### ORIGINAL PROCEEDING IN PROHIBITION

Before CLARK, P.J., and TURNAGE and NUGENT, JJ.

CLARK, Presiding Judge.

This is a proceeding in prohibition brought by Hershel D. Shepherd, an attorney and assistant prosecuting attorney for Buchanan County. In his petition, Shepherd asserts that without any prior notice to him of charges, the respondent judge convened and conducted a hearing July 2, 1987, and adjudged Shepherd in contempt of court. He seeks to prohibit the judge from proceeding further in the case and particularly to prohibit assessment of a penalty indicated to follow upon the judgment. We issued our alternative writ which is now made absolute.

The July 2 hearing at which the judgment of contempt was pronounced was called in a pending criminal case, *State v. McGaughy.* The case had formerly been in the circuit court division of respondent, but on June 19, 1987, on the motion of the state, respondent had ordered the case transferred to another division of the court. Subsequently, respondent apparently reconsidered the matter and by letter to Shepherd dated June 28, 1987, respondent

indicated that the state may not have been entitled to the transfer and a defect in the eventual trial could be the consequence. Respondent requested that Shepherd and defense counsel attend a hearing July 2, 1987, to settle the question.

As the July 2 hearing commenced, the court indicated displeasure with counsel over the failure by attorneys for the state and the defendant to attend previous trial settings. The court then inquired of Shepherd about a newspaper article in which Shepherd was reported to have said that a change of judge in the McGaughy case had been taken because the state could not obtain a trial setting in respondent's court. Shepherd replied that he did not recall making the statement. The court then called two witnesses, whose attendance had evidently been previously arranged, and questioned them about the newspaper account and about the procedure for notices of trial settings. The first witness was Mark Sheehan, apparently a newspaper reporter, and the second was Ireene Mooney, a court clerk.

The witnesses' evidence was followed by a colloquy between respondent and Shepherd over the question of what constituted adequate notice of a trial setting in a criminal case. Respondent expressed it as his opinion that Shepherd's statements concerning his knowledge of trial settings in the subject case were not truthful and he found Shepherd "in contempt of the Canons of Ethics." The docket entry made by respondent reads as follows:

> "Asst. P.A. Shepherd found in contempt of court for violation of Supreme Court rules and canons of ethics for improper conduct, penalty taken under advise (sic) for 5 days to allow attorney opportunity to show cause why he should not be so held in contempt and punished—M.M.S. (Improper statements as to courts conduct and improper statements to press affecting pending cases, publicity and improper conduct as prosecutor and attorney) all as stated in open court on record. —M.M.S."

On Shepherd's petition, this court issued its alternative writ of prohibition, respon-

dent filed his answer and Shepherd filed a reply. Exhibits include a transcript of the July 2 proceedings and a copy of the court's docket. There are no issues of fact. The cause turns on well recognized principles applicable to the subject of criminal contempt.

■ Civil contempt and criminal contempt are distinguishable in that civil contempt has the purpose of coercing a party to comply with relief granted his adversary while the purpose of criminal contempt is to protect the power and dignity of the law. *Jacoby v. Jacoby*, 675 S.W.2d 117, 120 (Mo. App.1984). Contempt may be direct or indirect. A direct contempt is one that occurs in the presence of the court or so near as to interrupt its proceedings. Indirect contempt arises from matters not transpiring in court but which goes to degrade or make impotent the authority of the court or to impede or embarrass the administration of justice. *Ex parte Ryan*, 607 S.W.2d 888, 890 (Mo.App.1980).

■ Sections 476.110 to 476.150, RSMo. 1986 define the power of courts to punish persons for criminal contempt. In all cases, except contempt committed in the immediate view and presence of the court, a party charged with criminal contempt is entitled to notice of the accusation and a reasonable time to make his defense. Section 476.130, RSMo.1986.

In this case, there were no rights of a litigant under judgment or order of the court at issue and the judgment of contempt did not purport to coerce Shepherd to perform any act required by any judgment. The issue was Shepherd's past conduct regarding the newspaper report and the aborted trial settings in the criminal case. As respondent's order indicated, the contempt was adjudged to impose a penalty on Shepherd for his actions. The conviction, therefore, was for a criminal contempt. As such, Shepherd was entitled to advance notice of the charge and an opportunity to prepare a defense.

The record leaves no doubt that Shepherd was given no notice of any charges against him and no opportunity to prepare

a defense in the face of witnesses the court called to testify in support of the charge. To the contrary, the notice from respondent which called Shepherd to appear July 2 disguised the purpose as only to deal with the issue of the change of judge. In the absence of notice, the respondent was not entitled to proceed with a judgment of contempt against Shepherd and that judgment must fail.

There is little doubt from the series of events that the cause of offense to the court was the newspaper article published June 25, three days before respondent scheduled the July 2 hearing. If the conduct of Shepherd in making the statement to the reporter attributed to him was the gravamen of the contempt charge, then by definition of terms, the contempt was indirect. Notice is a prerequisite to a finding of indirect criminal contempt. Respondent argues, however, that the contempt was committed in the presence of the court and was therefore direct.

The basis for respondent's contention seems to lie in his finding that Shepherd was untruthful when he denied to the court having had notice of previous trial settings in the McGaughy case. On this account, it is claimed no notice was required because the court possesses inherent power to punish summarily for direct criminal contempt. Assuming, for purposes of the point only, that such was the circumstance, a false statement by Shepherd may have been in violation of ethical responsibilities of an attorney, but it did not constitute criminal contempt.

■ False statements made in court, even by a witness under oath, do not constitute contempt of court. *Moore v. Buerger*, 709 S.W.2d 125 (Mo.App.1986). One who testifies falsely or makes misrepresentations to the court does affront the process and dignity of the court and, upon charge, may be convicted of perjury if the criminal offense is proved. But such conduct is not subject to summary punishment as direct criminal contempt.

In *Moore*, the divorced spouse was found in the opinion of the court to have testified falsely with respect to disposition of certain funds. When the witness refused to recant, the court found him in contempt and signed a warrant for his commitment. On petition for habeas corpus, Moore was ordered discharged. The opinion relied on *Ex parte Creasy*, 243 Mo. 679, 148 S.W. 914 (1912) for the proposition that refusal to answer when directed to do so by the court may constitute contempt, but answering the question untruthfully is not. This is so because the truth or falsity of an answer is a question of fact to be resolved by a jury in a criminal trial. *Moore* and *Creasy* stand for the proposition that an untruthful statement made to the court is neither direct nor indirect contempt.

It is recognized that in this case, Shepherd was not speaking as a witness under oath but committed an offense, in the opinion of the court, as an officer of the court in violation of the canons applicable to attorneys. The question then is whether such conduct, if considered not to be analogous to false testimony, is the type of offense to the court which constitutes direct contempt punishable without notice. The related issues are the extent of the court's inherent power under direct criminal contempt and the limitations imposed by constitutional due process.

The case of *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) cited in *Moore*, defines the due process exception which permits summary punishment for direct criminal contempt. It is there said that the narrow exception applies only to misconduct, in open court, which disturbs the court's business and where immediate punishment is essential to prevent demoralization of the court's authority before the public. It can scarcely be argued here that the dialogue between respondent and Shepherd concerning adequacy of the trial setting notice constituted, at that time, a disturbance of the court's business requiring immediate vindication of the court's authority. The incident was no more than a minor irritation compounding the offense taken at the earlier newspaper quotation.

There is, at a minimum, grave doubt that any misstatement or false statement by Shepherd standing alone constituted a con-

tempt at all. If it were, however, it was not a disturbance requiring immediate punitive sanction and Shepherd was entitled to notice of the charge and an opportunity to prepare a defense.

The writ of prohibition is made absolute.

All concur.