STATE of Missouri, ex rel., Rebecca LEPPER, Relator,

v.

Honorable Byron L. KINDER and Honorable Thomas J. Brown, III, Respondents.

No. WD 57584.

Missouri Court of Appeals, Western District.

March 28, 2000.

Daniel E. Hunt, Jefferson City, for relator.

Michael P. Riley, Jefferson City, for respondents.

Before JOSEPH M. ELLIS, Presiding Judge, HAROLD L. LOWENSTEIN, Judge and JAMES M. SMART, Jr., Judge.

JOSEPH M. ELLIS, Presiding Judge.

On October 14, 1998, Darrell Lepper filed a petition for the dissolution of his marriage from Rebecca Lepper in the Circuit Court of Cole County. On October 21, 1998, Darrell and Rebecca entered into a stipulation *pendente lite* which set forth the custody arrangement for their minor child. The stipulation set forth the parties' agreement to resume living together in an attempt to resolve their differences; however, should they be unable to continue to do so, it called for joint legal custody of the child, Darrell W. Lepper, Jr., with primary physical custody with Darrell, Sr., subject to supervised visitation by Rebecca.[1] Darrell and Rebecca were unable to reconcile, Rebecca subsequently moved out of the home on December 3, 1998 and moved in with her brother, taking Darrell, Jr. with her. On January 6, 1999, Darrell filed a motion to enforce the custody stipulation, to which Rebecca responded with a motion to rescind the stipulation. A hearing was held on both motions on January 25, 1999. At the hearing, Rebecca testified that she was never personally served with the dissolution petition, arguing that, because she had no knowledge of the divorce action and the parenting plan attached thereto at the time she signed the custody stipulation, it should be rescinded. During that hearing, the following exchange occurred:

> THE COURT: Were there any representations made to you? You just heard—you're a stranger to this process.

---

1. The stipulation was pursuant to a proposed parenting plan. *§ 452.310.7* RSMo Cum. Supp. (1998).

You better not tell an untruth on that stand.... I'll guarantee you, I'll see you're hammered by me in this courtroom. Do you understand that?

MRS. LEPPER: Yes, sir.

On March 3, 1999, Darrell filed a motion for contempt, citing Rebecca's testimony that she did not receive the petition prior to signing the stipulation, and alleging false testimony in violation of the court's verbal order to testify truthfully. In support of his motion, he filed two affidavits. The record contains an affidavit of James E. Helms, deputy sheriff of Maries County, Missouri, wherein the deputy, under oath, states that he personally served Rebecca with the dissolution papers on October 20, 1998. An affidavit from Darrell Lepper states that, outside the offices of his attorney on October 21, 1998, prior to signing the stipulation agreement, Rebecca handed him the dissolution papers and attached parenting plan which she had previously received. A hearing on the motion was held on May 24, 1999, wherein Darrell's counsel requested enforcement of the stipulation and prosecution of Rebecca for perjury under § 575.040.[2] Testimony on the affidavits was adduced. The deputy sheriff, James Helms, further testified to the "Service Log Sheet," admitted into evidence, on which he noted that he personally served Rebecca on October 20, 1998. In her defense, Rebecca presented the testimony of Joyce Bax, owner of a hair salon, who testified that Rebecca was in her shop on the evening of October 21, 1998 until almost 8:00 p.m. Darrell White, Rebecca's brother, testified that the Maries County deputy sheriff delivered the papers to him, not to Rebecca. Rebecca was given an opportunity to retract her prior statements, and again testified that she never saw the stipulation prior to the meeting of October 21, 1998, and that it was never served on her.

The trial court issued an order of contempt on June 7, 1999, finding that Rebecca willfully failed and refused to comply with the mandate of the court, specifically, that she failed to testify truthfully as to material facts and events having bearing on the dissolution action, in direct disregard to the court's orders. It found Rebecca in direct criminal contempt of court, and transferred the matter to Division I, for hearing and assessment of penalties.

Rebecca filed a motion to set aside the judgment on June 21, 1999, arguing that the judgment for contempt is not authorized by § 476.110, nor within the inherent power of the trial court to punish for direct contempt where the contemnor has allegedly testified falsely. She further argued that perjury is not a direct assault on the dignity of the court under Rule 36.01(a). Darrell contended that the court had the power to punish a party for perjury if the party is given an opportunity to prepare a defense and be heard. Darrell also argued that Rebecca's motion to set aside the judgment was untimely filed, alleging that it was filed more than thirty days after the hearing date of May 24, 1999. The matter was heard on July 1, 1999.

The Circuit Court issued an order on July 26, 1999, finding that Rebecca had failed to sustain her burden of proving that her failure to comply with the court's orders was not intentional and contumacious, and finding her guilty of contempt for perjury. The court ordered her to pay a fine of five hundred dollars ($500.00) and also to pay $500.00 to Darrell and his attorneys as reasonable attorney's fees.

■ On August 16, 1999, Rebecca, as Relator, filed a petition with this court, seeking a writ of prohibition to prohibit enforcement of the judgment, and purging all record of the contempt charge from the record in the dissolution case. This court issued a preliminary writ of prohibition on August 31, 1999 directing that respondent refrain from taking any further action to enforce the orders entered on June 7, 1999 and July 26, 1999 purporting to hold Rela-

---

**2.** All statutory references are to RSMo (1994) unless otherwise noted.

tor in direct criminal contempt. Relator alleges that her due process rights were violated at the May 24 hearing, in that she is entitled to a trial by jury, and that the court was without authority to hold her in contempt because the trial court had not met its burden of showing that she testified falsely beyond a reasonable doubt, and that the trial court lacked authority to hold her in contempt on the grounds of false testimony because there is no contempt punishment for perjury in Missouri. We find this last argument dispositive.

▬ In order to sustain a judgment of contempt, it must be shown that the particular judgment can be sustained under the facts and the law. *State ex rel. Tannenbaum v. Clark*, 838 S.W.2d 26, 31 (Mo.App. W.D.1992). In the case at bar, the trial court found Rebecca in direct criminal contempt by committing "perjury before this Court in the aforesaid hearing of January 25, 1999."[3] In its Judgment of Contempt, dated June 7, 1999,[4] the court stated:

> The Court finds from the evidence and testimony presented that Respondent has willfully failed and refused to comply with the order and mandate of this Court in that Respondent has committed perjury before this Court in the aforesaid hearing of January 25, 1999, by failing and refusing to truthfully testify before this Court to material facts relevant to the issues before this Court.

▬ The purpose of criminal contempt is to protect the power and dignity of the law. *Jacoby v. Jacoby*, 675 S.W.2d 117, 120 (Mo.App. W.D.1984). *See also Teefey v. Teefey*, 533 S.W.2d 563, 566 (Mo. banc 1976). The contempt power is part of the judicial power of the courts, and inherent in the constitution of this state. *State ex rel. Pulitzer Pub. Co. v. Coleman*, 347 Mo. 1238, 152 S.W.2d 640, 646 (1941). "Direct contempt" is that which occurs in the presence of the court, or so near as to disrupt the proceedings. *State ex rel. Shepherd v. Steeb*, 734 S.W.2d 610, 611 (Mo.App. W.D.1987).

▬ Since the trial court ordered Rebecca to answer the questions truthfully, and determined upon hearing evidence at the subsequent hearing that she did not do so, it found her to be in direct criminal contempt for perjury. However, there is a critical distinction between the refusal to answer a question when ordered by the court, and answering untruthfully (couched herein as refusal to obey a court order). *See Ex parte Creasy*, 243 Mo. 679, 148 S.W. 914, 921 (1912). While the former is grounds for criminal contempt, the latter is not. *Id.* If a witness is untruthful, she subjects herself to a charge of perjury, but not to a charge of contempt as for refusing to answer a question. *Id.; Moore v. Buerger*, 709 S.W.2d 125, 130 (Mo.App. E.D. 1986).

> "False statements made in court, even by a witness under oath, do not constitute contempt of court. One who testifies falsely or makes misrepresentations to the court does affront the process and dignity of the court and, upon charge, may be convicted of perjury if the criminal offense is proved. But such conduct is not subject to summary punishment as direct criminal contempt."

*Steeb*, 734 S.W.2d at 612 (citation omitted). "[T]he court [cannot] make contempt of that which is not contempt: and every attempt to do so would be in excess of authority or jurisdiction ... There must be contempt in order to justify punishment for that offense." *Ex parte Creasy*, 148 S.W. at 920. "[I]nsistence of the law for strict procedure in criminal contempt is to

---

**3.** "A person commits the crime of perjury if, with the purpose to deceive, he knowingly testifies falsely to any material fact upon oath or affirmation legally administered, in any official proceeding before any court...." § 575.040.1.

**4.** The statement is repeated in the subsequent order of July 26, 1999:

**678**

counterpoise the imbalances of this punitive, albeit *sui generis,* proceeding." *Clark,* 838 S.W.2d at 28. While the trial court may have been firmly convinced that Rebecca provided false testimony, the judgment of contempt and attendant fine exceeded its jurisdiction and was not the proper vehicle for addressing the issue.

For the foregoing reasons, we make our preliminary writ of prohibition absolute, and the respondents are hereby prohibited from taking any action to enforce the judgment of June 7, 1999 and the subsequent order of July 26, 1999, holding Relator in direct criminal contempt and imposing a fine of $500.00 on her, as well as ordering her to pay the sum of $500 to the petitioner's attorneys in the underlying case.

All concur.