**In re Vincent LOMAX, Petitioner,**

v.

**Jack L. MERRITT, Greene County Sheriff, Respondent.**

No. SD 26669.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 2005.

Vincent Lomax, pro se.

Darrell L. Moore, Prosecuting Atty., Michael Huddleston, Office of Prosecuting Atty., John W. Housley, Springfield, for respondent.

Before PARRISH, P.J., SHRUM, J., and BATES, C.J.

PER CURIAM.

Vincent Lomax ("Petitioner") has filed a petition for writ of habeas corpus in this court challenging the lawfulness of his detention in the Greene County jail by Jack L. Merritt ("Respondent"), the sheriff of Greene County, Missouri. Specifically, Petitioner challenges the validity of his confinement pursuant to an "Order of Contempt" entered by the Honorable Donald E. Burrell, Jr., on January 14, 2004. This court orders Petitioner discharged from the effects of the January 14, 2004, Order of Contempt.

## BACKGROUND

On October 5, 2001, Petitioner was charged in Greene County Case No. 301CF8584 with three counts of passing bad checks in violation of § 570.120.[1] Petitioner posted bond in the case on April 23, 2003, and was released from custody.

Before his release, Petitioner filed various pro se documents with the circuit court in which he claimed to own the name "Vincent Lafayette Lomax" by virtue of a "common-law copyright of trade-name/trade-mark." Among other things, these documents stated that any person who used the name "Vincent Lafayette Lomax" or any derivative thereof without the "prior, express, written consent and acknowledgment of Vincent Lafayette Lomax" would be bound by a "Self-executing Contract/Security Agreement" whereby the "User" agreed to grant "Secured Party" a security interest in the "User's assets" in the amount of $500,000 for each unauthorized use of petitioner's name. According to the documents, "Vincent Lafayette Lomax is Secured Party."

While free on bond, Petitioner failed to appear for several scheduled court appearances. As a result, on November 25, 2003, the circuit court issued a capias warrant for his arrest. Thereafter, Petitioner was arrested on the warrant and confined in the Greene County jail.

On January 14, 2004, Petitioner appeared before Judge Donald E. Burrell, Jr., in the circuit court of Greene County. Based on the transcript of those proceedings, it is evident that, some time prior to the January 14 proceeding, Petitioner had refused to grant Judge Burrell permission to call him by name. It appears that the

---

1. Unless otherwise indicated, all statutory references are to RSMo (2000).

purpose of the January 14 hearing was to revisit this issue. At the outset, Judge Burrell said to Petitioner, "State your name, please." Petitioner replied, "Vincent Lomax." Judge Burrell then addressed Petitioner as follows:

> Sir, I gave you some additional time to consult with [counsel] and try and come up with a legitimate reason for your insistence that I not call you by your name during these proceedings. I've taken a look at the file. I think some of the filings that you've made and put in the file I could interpret as an attempt to influence me and hinder me from carrying out my official duties in a way that I think is proper.
>
> I told you that you're in danger of being found in contempt, also for not allowing me to use your name during these proceedings, which I think is required for me to fulfill those duties. So you were going to have some time to think about that, consult with your lawyer, and get back to me on what if any explanation you have for your position. I think I'm ready to hear that from you now.

Petitioner responded:

> My position has to do with my defense in this case, Judge. And the fact that my reluctance or hesitancy, as it was, to grant your permission to use my name affects my defense. It has to do with my right to privacy under the Fourth Amendment of the Constitution and the due process right not to have my property taken without—not—to be compensated for use of my property without due process, without—excuse me, let me regress. The right not to have my property used without compensation under the Fifth Amendment to the Constitution. These are reasonable, I think, legal positions to take with regard to this matter, and that's basically in my own

words the reason that I'm hesitant to allow you to use my name.

After further colloquy between Judge Burrell and Petitioner—all of which appears to have been conducted in a civil and courteous manner—Judge Burrell announced:

> All right. Well, with all do [sic] respect, back to you. I'm going to find you in criminal contempt of this Court for refusing me ... the right to use your name, if there is such a right. Your refusal to waive it I think is unreasonable. I think it's criminally contemptuous of this Court's authority. And so I hereby find you in criminal contempt of this Court.
>
> You can purge yourself at any time you want, sir, by coming in and allowing me to use your name in connection with ... this criminal proceeding and not for any other purposes, and certainly not to waive any other rights that you have anywhere else. But I'm not taking any additional action on this case until you use the key that you have to unlock the jail house doors, so to speak, and allow us to proceed.

Judge Burrell proceeded to enter an "Order of Contempt" consistent with his pronouncement of contempt from the bench. The text of the order reads as follows:

### ORDER OF CONTEMPT

THE DEFENDANT herein, having appeared before this Court on the 14th day of January, 2004, and having been given the opportunity to grant this Court permission to address him by his given name, has refused to grant such permission.

IT IS the finding of this Court that the denial of permission to address the Defendant by name for the limited purpose of this case is without legal justification, is done in bad faith, and is contemptuous of the authority of this Court;

IT IS, therefore the Order of this Court, that the defendant in this case be remanded to the custody of the Greene County Sheriff and held without bond. It is the further Order of this Court that the Defendant may purge himself of this contempt, at any time, by the act of granting this Court permission to address him by name during the conduct of these proceedings.

Done in open court this 14th day of January, 2004.

/s/ Don E. Burrell

Judge Don E. Burrell

After filing numerous petitions for writ relief in various courts, Petitioner filed the instant petition for writ of habeas corpus in this Court on November 23, 2004. Petitioner asserts that his refusal to grant Judge Burrell permission to address him by name was not contemptuous conduct. Respondent, on the other hand, maintains that Petitioner's conduct was contemptuous and that his detention pursuant to Judge Burrell's January 14 "Order of Contempt" is lawful.

## DISCUSSION AND DECISION

■■■ There are two classes of contempt, civil and criminal. *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 578 (Mo.banc 1994).[2] The trial court's designation of the contempt as criminal "does not necessarily make it such." *Teefey v. Teefey,* 533 S.W.2d 563, 565 (Mo.banc 1976). *See In re Marriage of Hunt,* 933 S.W.2d 437, 448 (Mo.App.1996). "We must rather look to the substance of the order to determine its true nature." *Id.* at 448. "The distinction between criminal contempt and civil contempt is not always clear and '[t]here can be contempts in which both civil and criminal elements appear.'" *Ex parte Ryan,* 607 S.W.2d 888, 890 (Mo.App.1980) (quoting *State ex rel. Jarboe v. Holt,* 444 S.W.2d 857, 860 (Mo. banc 1969)). "'Although at times the line is hard to draw, the essential difference lies in who is sought to be protected by the contempt proceeding.'" *Teefey,* 533 S.W.2d at 565–66 (quoting *Mechanic v. Gruensfelder,* 461 S.W.2d 298, 304 (Mo. App.1970)). *See Mummert,* 887 S.W.2d at 578.

"Civil contempt is for the protection of a party to the litigation, the party for whose benefit the order, judgment or decree was entered. Its function is to provide a coercive means to compel the other party to the litigation to comply with relief granted to his adversary....

"Criminal contempt on the other hand does not serve the function of aiding a litigant in achieving the relief granted but is for the purpose of protecting the dignity of the court.... The power of criminal contempt springs not from the needs to protect a litigant, but from the inherent power of the courts to protect the judicial system...."

*Teefey,* 533 S.W.2d at 566 (quoting *Mechanic,* 461 S.W.2d at 304–05). Stated another way:

Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered. Its purpose is to coerce compliance with the relief grant-

---

**2.** Additionally, each of the two classes of contempt also has two subcategories, direct and indirect. *Mummert,* 887 S.W.2d at 578.

A direct contempt occurs in the immediate presence of the court or so near as to interrupt its proceedings. If the judge certifies that he or she saw the conduct constituting contempt, a direct contempt may be pun-

ished summarily. An indirect contempt arises from an act outside the court that tends to degrade or make impotent the authority of the court or to impede or embarrass the administration of justice. *Id.* (Citations omitted.) Here, the conduct at issue occurred in the presence of the court.

ed.... Criminal contempt is punitive in nature and acts to protect, preserve, and vindicate the authority and dignity of the judicial system and to deter future defiance.

*Mummert,* 887 S.W.2d at 578 (citations omitted).

■ Here, at the time the "Order of Contempt" was entered, there existed no order for the benefit of another party concerning the use of Petitioner's name. Moreover, there is nothing in the "Order of Contempt," itself, or elsewhere, to indicate that the order was made to protect another party to the litigation or to coerce Petitioner to comply with any prior order made for the benefit of another party. Instead, the "Order of Contempt" appears to have been intended to "protect, preserve and vindicate the authority and dignity" of the court. *See Mummert,* 887 S.W.2d at 578. Therefore, we conclude that Judge Burrell's "Order of Contempt" is in the nature of criminal contempt and that habeas corpus is appropriate to challenge the lawfulness of Petitioner's confinement pursuant to that order. *See Thornton v. Doyle,* 969 S.W.2d 342, 344–45 (Mo.App.1998) ("There is no right of appeal from a judgment of criminal contempt. Where the contemnor is committed to jail, the validity of the judgment is tested by a writ of habeas corpus.").

■ "In order to sustain a judgment of contempt, it must be shown that the particular judgment can be sustained under the facts and the law." *State ex rel. Lepper v. Kinder,* 14 S.W.3d 674, 677 (Mo. App.2000). By their terms, Rule 36.01, Missouri Supreme Court Rules (2004), and sections 476.110–.160 are applicable to cases of criminal contempt. As relevant here, Rule 36.01(a) provides that "[t]he judgment of contempt and the order of commitment shall recite the facts and shall be signed by the judge and entered of record." Similarly, section 476.140 provides that "[w]henever any person shall be committed for any contempt specified in sections 476.010 to 476.310, the particular circumstances of his offense shall be set forth in the order or warrant of commitment." "[I]n contempt proceedings, whether direct or indirect, the facts and circumstances constituting the offense ... must be recited with particularity in both the judgment of contempt and the order of commitment." *Ex parte Brown,* 530 S.W.2d 228, 231 (Mo.banc 1975). "A judgment of criminal contempt, otherwise void on its face, cannot be validated by other conduct, contemptuous in fact, which is not made a part of the judgment." *State ex rel. Tannenbaum v. Clark,* 838 S.W.2d 26, 35 (Mo.App.1992).

■ Here, the only fact recited in the "Order of Contempt" as giving rise to the order is that Petitioner refused to grant the trial court permission to address him by his given name. Based on our review of the "Order of Contempt" and the trial court's record in this matter, we find that Petitioner's refusal to grant Judge Burrell permission to address him by name, standing alone, was not contemptuous. In so holding, we observe that Petitioner does not deny that he is Vincent Lomax. On the contrary, he willingly identified himself as "Vincent Lomax" during the January 14 hearing. Furthermore, there is no indication in the transcript of the January 14 hearing or the "Order of Contempt" that Petitioner, in refusing to grant Judge Burrell permission to call him by name, behaved uncivilly or insolently toward the court in any way. Finally, we note that Judge Burrell did not need permission to call Petitioner by his name. Thus, Petitioner's refusal to grant such permission was inconsequential. " '[T]he court [cannot] make contempt of that which is not contempt: and

every attempt to do so would be in excess of authority or jurisdiction ... There must be contempt in order to justify punishment for that offense.' " *Kinder*, 14 S.W.3d at 677 (quoting *Ex parte Creasy*, 243 Mo. 679, 148 S.W. 914, 920 (1912)). Because Petitioner's refusal to grant Judge Burrell permission to call him by name was not contemptuous, the trial court exceeded its jurisdiction by holding Petitioner in criminal contempt on that basis.

 Moreover, we note that the penalty imposed in the "Order of Contempt" also exceeded the trial court's jurisdiction. As stated above, "[c]riminal contempt is punitive in nature and acts to protect, preserve, and vindicate the authority and dignity of the judicial system and to deter future defiance." *Mummert*, 887 S.W.2d at 578. "Where imprisonment is imposed as a punishment, as in criminal contempt, generally it must be for a fixed or definite term and it cannot be prolonged indefinitely." 17 C.J.S. *Contempt* § 117 (1999). Here, the penalty set out in the "Order of Contempt" is not for a definite term. Rather, it orders Petitioner to be held for an indefinite term, without bond, until such time as he purges himself of contempt. By its nature, such a penalty is coercive and would be permissible in a case of civil contempt. *See, e.g., Ryan*, 607 S.W.2d at 890. Inasmuch as this was a proceeding for criminal contempt, however, such a penalty was inappropriate and in excess of the trial court's jurisdiction.

For all of these reasons, we hereby order Petitioner discharged from the effects of the January 14, 2004, "Order of Contempt." This order of discharge should not be considered as a grant of any relief in connection with the charges currently pending against Petitioner in Greene County Case No. 301CF8584. *See State*

*ex rel. Mack v. Purkett*, 825 S.W.2d 851, 858 (Mo.banc 1992).